UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:17-cv-157-FDW

| RODNEY WALLACE, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) ORDER |
| GEORGE T. SOLOMON, et al., | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, (Doc. No. 1). Plaintiff is proceeding *in forma pauperis*. See (Doc. No. 6).

I. BACKGROUND

*Pro se* Plaintiff has filed a civil rights suit pursuant to 42 U.S.C. § 1983, seeking injunctive relief for the allegedly inadequate meals he was being provided at Marion Correctional Institution in accordance with his Islamic religion. (Doc. No. 1). The Court dismissed the Complaint without prejudice as moot because he had been transferred to another facility. (Doc. No. 10). The Fourth Circuit affirmed as to the Defendants who were employed at Marion C.I. but reversed as to two other Defendants: Department of Public Safety ("DPS") Director of Prisons George T. Solomon and Director of Chaplaincy Services Betty Brown insofar as the allegations relate to DPS policy rather than the conditions present at Marion C.I. (Doc. No. 16). The Complaint is now before the Court on initial review of the claims against Defendants Solomon and Brown pursuant to the Fourth Circuit's mandate. (Doc. No. 17).

Construing the Compliant liberally and accepting the allegations as true, Islamic dietary law "prohibits more than items and meats that may contain pork." (Doc. No. 1 at 4). DPS policy

1

provides that inmates whose religious beliefs prohibit the consumption of pork may eat from a non-meat alternative selection, is directly in conflict with Islamic dietary law and forces Islamic inmates to eat food which is prohibited by Islamic dietary law. Islamic inmates are being discriminated against in that they are not being provided with "proper dietary meals" whereas other religious groups are being provided with diets that are specific to their religions, including Jewish, Rastafarian, and Buddhist inmates. (Doc. No. 1 at 6). He asks that the Court order DPS to provide Muslim inmates with meals that fulfil their religious dietary law as stated in the Quran and by the Prophet Muhammad.

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972) (a pro se complaint, however inartfully pled, must be held to less stringent standards than

2

formal pleadings drafted by lawyers); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). A plaintiff must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III. DISCUSSION

**(1) Free Exercise of Religion**

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech…." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. See Turner v. Safley, 482 U.S. 78, 89-91 (1987); Pittman v. Hutto, 594 F.2d 407, 410 (4th Cir. 1979). When a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective

3

of prison administration, safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citing Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 129 (1977)).

To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. See generally Hernandez v. C.I.R., 490 U.S. 680, 699 (1989). An inmate has a "clearly established right … to a diet consistent with his … religious scruples." Lovelace v. Lee, 472 F.3d 174, 201 (4th Cir. 2006) (quoting Ford v. McGinnis, 352 F.3d 582, 597 (2d Cir. 2003)). Prison officials violate "this clearly established right if [they] intentionally and without sufficient justification den[y] an inmate his religiously mandated diet." Lovelace, 472 F.3d at 199. A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner, 482 U.S. at 89).

Liberally construing the Complaint, it appears that Plaintiff is alleging that DPS's religious meal policy violates his First Amendment right to freely exercise his religion. He alleges that DPS policy that provides for non-meat selections for inmates whose religious beliefs prohibit the consumption of pork violates Islamic dietary law which prohibits "more than items and meats that may contain pork." (Doc. No. 1 at 4).

Assuming that Plaintiff intended to state a First Amendment claim, it is insufficient to proceed. Plaintiff's vague and conclusory allegations fail to state that he has a sincerely held religious belief or that Defendants' actions have substantially burdened his exercise of that belief. Fed. R. Civ. P. 8(a)(2) (short and plain statement is required); Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not

4

sufficient); Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim). Further, his conclusory allegation that DPS's policy is in "direct conflict" with Islamic beliefs is not supported by any factual allegations. (Doc. No. 1 at 4). Although he alleges that Islamic dietary law prohibits "more than" the consumption of pork, he fails to identify these restrictions or explain how a non-meat option fails to satisfy them. (Id.). The allegations are therefore insufficient to state a First Amendment claim and, to the extent Plaintiff intended to assert such a claim, it will be dismissed.

**(2)     Equal Protection**

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The equal protection requirement "does not take from the States all power of classification," Personnel Adm'r v. Feeney, 442 U.S. 256, 271 (1979), but "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). To succeed on an equal protection claim, a § 1983 plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If he makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. Ordinarily, when a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 319–320 (1993).

The Fourth Circuit does not recognize prisoners as "a suspect class." Roller v. Gunn, 107

F.3d 227, 233 (4th Cir. 1997). When equal protection challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. See Morrison, 239 F.3d at 654–55. In a prison context, therefore, the court must determine whether the disparate treatment is "reasonably related to [any] legitimate penological interests." Shaw v. Murphy, 532 U.S. 223, 225 (2001). This deferential standard applies "even when the alleged infringed constitutional right would otherwise warrant higher scrutiny;" however, this more deferential review does not ignore the concerns that justify application of a heightened standard outside of the prison context. Morrison, 239 F.3d at 655-56.

Plaintiff alleges that Jewish, Buddhist, and Rastafarian inmates are provided with meals that fulfill their respective religious dietary laws that are "specific to their religious requirements." (Doc. No. 1 at 6). He claims that Muslim inmates are being discriminated against because DPS does not provide them with a special religious diet.

Plaintiff's conclusory allegations fail to explain how Islamic inmates' religious dietary beliefs are not being satisfied as discussed in Section III(1), *supra*, and he does not explain how Islamic inmates are similarly situated with Rastafarian, Jewish, or Buddhist inmates. Nor does he allege that any unequal treatment is the result of Defendants' purposeful discrimination. Therefore, Plaintiff's equal protection claim will be dismissed.

### IV. CONCLUSION

For the reasons stated herein, the Complaint fails to state a claim upon which relief can be granted and is therefore dismissed without prejudice.

**IT IS, THEREFORE, ORDERED** that:

1. The Complaint, (Doc. No. 1), is **DISMISSED** pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii).

2. The Clerk is directed to close this case.

Signed: November 14, 2018

Frank D. Whitney
Chief United States District Judge